### JOHN M. McDONALD et al. *v.* INGRAHAM and READ.

1. BANKRUPTCY: DISCHARGE.—If the debt, upon which a judgment was rendered against a bankrupt, after the filing of his petition, but before the granting of his certificate of final discharge, be of such a nature as to be discharged by the proceedings in bankruptcy, the judgment is also discharged.   See 3 Comstock, 216.

2. JUDGMENT: EFFECT OF.—The merger of a debt into a judgment, does not change its substantial nature, or impart to it legal efficacy, when it had not sufficient ground to support it in its original form; hence it may always be impeached in equity, if the party aggrieved can show sufficient reasons for not making his defence at an earlier stage of the transaction.

3. SAME.—The essential qualities of a judgment are, not that it creates a new debt, entirely distinct and separate from the original debt upon which it is founded, and absolved from its original consideration, but in its being *primâ facie,* a conclusion of any defence which might have been made to the action in which it was rendered, and in its capacity to be enforced by execution.

4. It is the granting of the certificate of final discharge, and not the decree declaring a party to be a bankrupt, which operates as a discharge to him from his debts: he cannot plead the latter in bar of an action pending against him.

IN error from the Superior Court of Chancery.   Hon. Charles Scott, chancellor.

The facts are sufficiently stated in the opinion of the court, and briefs of counsel.

*Yerger* and *Rucks*, for plaintiffs in error.

This case is manifestly erroneous, and should be reversed. On the ninth day of November, 1842, a judgment was rendered in the Circuit Court of Copiah county, against John M'Donald, John Curtis, Stephen Tillman, and William Matheny, in favor of the Grand Gulf Rail Road and Banking Company.

This judgment, the complainants, as assignees, seek to enforce against the defendants. John M'Donald and John Curtis have pleaded; and in their answer rely upon their several discharges in bankruptcy, as a bar to the proceedings against them.

From the certificates of discharge filed with the pleas and answer, it appears that they were each *declared* bankrupts on the 8th day of November, 1842. But M'Donald was *not discharged* until the 20th of February, 1843, and Curtis, until the 23d February, 1843.

It is clear from the record, that the decree in bankruptcy, by which the defendants *were discharged* from their debts, was *after* the rendition of the judgment; and they were therefore clearly absolved from the judgment, as has been universally held. It is true, they were *declared* bankrupts on the 8th day of November, 1842, *the day before* the judgment was rendered against them; but the *declaration* that they were bankrupts was no bar to the suit against them, and could not have been interposed to prevent the rendition of the judgment against them. See 4th section of Bankrupt law, 22 Verm. 642; 3 Comst. 216.

But if it could have been pleaded, the reason assigned for not pleading it, to wit, their ignorance of the fact that it had been rendered, is a sufficient excuse for not doing so, and would entitle them to be relieved in equity from the judgment. The order *declaring* them bankrupts, was made in Jackson, on the 8th of November, 1842; the judgment against them was rendered in Copiah county, on the 9th of November. They were in Copiah county on both days; and without the power of ubiquity and omniscience, it was a moral and almost a physical impossibility at that day, when there were no telegraphs or railroads in that direction, that they could have known of the decree declaring them bankrupts, in time to have made the plea.

But, as before remarked, all this is outside of the real merits of the case, because the decree by which they *were discharged* from their debts, was rendered after the judgment was obtained, and could not, therefore, have been pleaded, while the mere order *declaring* them bankrupts, rendered on the 8th of November, was no bar, and could not have been pleaded to the proceedings against them.   10 S. & M. 348; 7 Ib. 306; 5 Ala. R. 810; Ib. 676.

*W. S. Wilson,* for defendants in error.

The reason assigned, why this decree should be reversed is, that John M'Donald and John Curtis, two of the defendants, against whom it was given, were discharged bankrupts, against whom the complainants in chancery were not entitled to the relief which they prayed.

Ingraham and Read, sued as equitable assignees of a judgment, recovered in Copiah Circuit Court, by the Grand Gulf Bank, on the 9th day of November, 1842.   M'Donald and Curtis, each filed his plea of bankruptcy.   The one stated in his plea, that he presented his petition to the Circuit Court of the United States, to be discharged as a bankrupt on the 6th October, 1842, and the other, that his petition was filed in the same court, on the 31st of August, 1842.

Each of them stated in his plea, that he was duly declared a bankrupt, and discharged from his debts on the *8th Nov.,* 1842, —*one day before* the judgment were received.

The certificates were referred to in the pleas, and filed with them, and showed, that M'Donald was discharged on the 20th of February, 1843, and Curtis on the 24th February, of the same year.

These pleas were properly overruled, for several sufficient reasons.

1. They do not state that the parties filed their petitions in the court of the district where they resided.   No other court had jurisdiction.   Bankrupt Act, § 7.

2. They do not state that the debt sued for was a provable one—which this court has declared to be essential averment.   25 Miss. Rep. 171.

3. The pleas set up discharges, obtained *before the judgment was recovered.*

This being so, the certificates in bankruptcy were pleadable in bar of the recovery of the judgment; and upon a familiar principle, cannot now be set up against it.

It is true, that the defendants filed with their pleas in the lower court, their certificates, which were referred to, and they showed discharges obtained long after the day named in the plea, and long after the judgment was rendered.

But obviously, the sufficiency of the pleas was to be tested by their own averments. Surely, bad pleas cannot be helped out, by evidence which would have sustained good ones. Besides, the certificates were not evidence under the pleas, because they were contradictory of each other.

Does the answer show any better reason, why the decree should not have been passed?

It is defective, for the same reasons as those given, showing the plea to be bad.

It is substantially the same with the pleas, reiterating the averment of a discharge on the 8th of November, 1842, and giving a reason why the defence was not made in the Circuit Court, that the parties were ignorant that the discharge had been granted. Now this may have been a very good reason, why a new trial should have been granted by the court giving judgment, but it can furnish no reason why that judgment should not be enforced in a direct action upon it, after it has been so long acquiesced in. And this upon a familiar principle; for were it otherwise, any judgment could be assailed, for mere error in the court giving it, and that too by matter *dehors* the record; and thus there would be no end to strife. Judgments would lose that conclusiveness and absolute verity, which we are taught to ascribe to them. There would be no such thing as an estoppel by matter of record.

But shall it be said, that the judgment of the 9th of November, 1842, was discharged by the bankrupt's discharge on the 8th, *because* the cause of action in which it was recovered existed at the time the petition in bankruptcy was filed, and constituted a provable debt?

I have already remarked, that it is not stated in the pleadings that the debt was a provable debt; nor is it alleged that it was

not a fiduciary debt; nor generally, that it was a debt to which the certificate would apply.

Suppose all this, however, to be shown, was it ever heard of, that in a suit upon a judgment, the defendant could go back behind it and show, as a defence, that the original recovery could not have been had, if he had interposed a good plea, which he could have made, but failed to set up? Surely, no one will pretend, that in ordinary cases, this can be. Is there anything to exempt cases in bankruptcy from the operation of rules applicable to all others?

The courts say not—for they declare in England, that if, pending a suit, a defendant be declared bankrupt, he must plead his certificate *puis darrein continuance.* If he does not, and judgment is obtained, in an action upon that judgment, he cannot plead his certificate. 9 Dow. & Ryl. 171; 6 B. & C. 105. So, also, 4 Geo. R. 175.

Not only so, but the courts in this country have determined, that if a suit for a debt due, be pending against a bankrupt at the time his petition for discharge is filed, and pending the proceedings in bankruptcy a judgment is recovered, and subsequently thereto a certificate of discharge is granted, that certificate does not bar the judgment. 2 Denio, 73; 6 Hill, 274; 7 N. Y. R.; 27 Me. (14 Shep.) 441; 30 Ib. (17 Shep.) 459.

In *Clark* v. *Rowling,* 3 Comst. 224, the Court of Appeals of New York receded from the previous decisions in that state, holding, that under the circumstances above stated, a certificate obtained after judgment, is a bar to a subsequent suit brought upon it. But Bronson, C. J., and Jewett, J., dissented. The court is referred to the strong dissenting opinion, which insists that the original cause of action was merged in the judgment, which henceforward became the evidence of a new contract—a new cause of action—which, having come into being after the proceedings in bankruptcy commenced, was not provable.

HANDY, J., delivered the opinion of the court.

This was a bill filed in the Superior Court of Chancery, by the defendants in error, as assignees of the Grand Gulf Bank, a dis-

solved corporation, to enforce a judgment at law, previously rendered in favor of that bank against the plaintiffs in error, on the 9th of November, 1842.

The defendants below, first pleaded their discharges severally in bankruptcy; which pleas being overruled, they then set up their several certificates of discharge in bankruptcy, by way of answer, exhibiting the certificates, by which it appears that the defendant, M'Donald, filed his petition in bankruptcy on the 31st of August, 1842, and the defendant, Curtis, filed his petition on the 6th of October, 1842; that they were both declared bankrupts by decree, rendered on the 8th of November, 1842; and that they both obtained their certificates of final discharge in February, 1843.

It is conceded that the debt, on which the judgment at law was rendered, was in existence at the time the parties filed their petitions in bankruptcy; and from the allegation in the answer, that they were discharged by the certificates of final discharge—*the case being heard on bill and answers*—it must be taken that the debt, in the form in which it stood before judgment, was provable in bankruptcy.

The question then, is, whether the certificate of final discharge of the bankrupts, operated as a discharge of the judgment which was rendered against them after the filing of their petition, but before the date of their final discharge as bankrupts.

It is conceded by the counsel for the defendants in error, that if the judgment at law could be regarded as the same debt exististing against the bankrupts when they filed their petition for the benefit of the bankrupt act, the debt would be extinguished by the final discharge.    But it is said, that by the judgment the old debt was merged, and a new debt thereby created, which had no existence when the proceedings in bankruptcy were instituted, and which, therefore, not being provable, was not affected by the discharge in bankruptcy.

We do not think that this position is well founded.    It is certainly true, that the bankrupts were discharged from the debt in the form in which it stood at the time when they filed their petitions in bankruptcy, and that if the final discharge had been granted before the suit at law came on for trial, the discharge

McDonald et al. *v.* Ingraham et al.

would have been a complete bar to the recovery. But the discharge had not then been granted, and it was therefore beyond the power of the parties to avail themselves of it as a defence. And this is a sufficient answer to the objection, that the parties having failed to avail themselves of the defence to the suit at law, cannot now be permitted to set it up in equity.

Can it be said, then, that the judgment became a new debt, wholly disconnected with the original debt, so that it would not be affected in any manner by any consideration connected with the original debt? We think not. A debt is said to be merged, when its original form is changed into a form importing higher dignity; as a parol contract converted into a bond, or a bond or other contract converted into a judgment. But the essential difference between such contract in its original form and its new form, consists in two particulars; the first having reference to the legal effect of the new contract *in point of evidence*, as a bond importing of itself to be on sufficient consideration, or a judgment being *primâ facie* a conclusion of any defence which could have been made to the action in which it was rendered; and the second having reference to its *operative force*, as a judgment being capable of enforcement by execution. But the form into which the debt may be changed, cannot change its substantial nature, and impart to it legal efficacy, when it had not sufficient ground to support it in its original form. The process of impeaching it, may be rendered more difficult by the new form and higher dignity which it has assumed. It may be more difficult to show a want of consideration of a bond than of a debt by simple contract; and it may be much more difficult to show that a judgment has no legal foundation to support it, than to establish such defence pending the action. Yet it could scarcely be said, that such a judgment cannot be vacated, especially in a court of equity; and the question in such cases always is, whether a sufficient excuse is shown for not making the defence at law. Hence, though the old debt be merged in the new one, it does not create a new contract severed and absolved from its original consideration; but in equity it must stand upon its original consideration, and when that fails it may be impeached, whatever may be its new form, if the party

aggrieved can show sufficient reasons for not interposing his defence at an earlier stage of the transaction.

It is not denied that the debt on which the judgment in this case was founded, was discharged by the certificates in bankruptcy; and it is therefore clear that the judgment has no legal or equitable consideration to support it, and should not be enforced in a court of equity. The plaintiffs in error were unable to avail themselves of their discharges before judgment, because they were not then granted; and their failure to do so, cannot conclude their right to set up their discharges as a defence to this bill, which is the first opportunity they have had to make the defence.

The conclusion to which we have come, is sustained by the well-considered case of *Clark* v. *Rowling*, 3 Comst. 216.

The decree is reversed, and the bill dismissed, as to the plaintiffs in error.